CASE 43—ACTION FOR MONEY HAD WITHOUT CONSIDERATION
—APRIL 14.

# Town of Providence, Etc. v. Shackelford & Foxwell, Etc.
## Same v. Price & Frederick.
## Same v. Forsythe & Henry.
## Sebree City v. Klyman.
## Same v. Hampton & Rayborn.

APPEALS FROM WEBSTER CIRCUIT COURT.

MUNICIPAL CORPORATIONS—RECOVERY OF MONEY ILLEGALLY COLLECTED
FOR LIQUOR LICENSE.—The appellant municipalities having been transferred by the circuit court from the sixth class to the fifth, collected of each of the appellees a liquor license of $1,000. The act under which the transfer was made having been adjudged invalid the appellees sued to recover the difference between the maximum license authorized by cities of the sixth class ($500) and the amount paid. It is held by the court that plaintiffs are not entitled to recover. The payment was made to a *de facto* city of the fifth class and appellees are estopped to deny the validity of the organization.

M. C. AND G. D. GIVENS FOR THE APPELLANTS.

1. Taxes paid voluntarily can not be recovered back by suit, and voluntary and involuntary payments distinguished. City of Louisville v. Anderson, 79 Ky., 334; L. & N. R. R. Co. v. Hopkins County, 87 Ky., 605; L. & N. R. R. Co. v. Com., 89 Ky., 531;

Bruner & Bloom v. Clay City, 18 Ky. Law Rep., 1008; Bruner v. Town of Stanton, 19 Ky. Law Rep., 1514.

2. Section 162 of the Constitution applied to implied as well as express contracts. Herzog Mfg. Co. v. Canyon Co., 85 Fed. Rep., 396; Beach on Contracts, sec. 1208 and notes; Story on Con., sec. 1377; Cooley's Student Ed. to Const. Lim., p. 324; Craycraft v. Selvage, 10 Bush, 708.

JOHN W. LOCKETT ON THE SAME SIDE.    (F. M. BAKER AND M. C. & G. D. GIVENS OF COUNSEL.)

1. We admit that the circuit court could not transfer these towns from the sixth to the fifth class, 95 Ky., 233.

2. But the court, under section 3661 of the statutes, rendered a judgment of transfer. The local community accepted it in good faith as valid and organized a fifth class city government and the ordinances of said government are valid and only the State can deprive the towns of the franchises of a fifth class city. Dillon on Mun. Corps. (4th ed.), sec. 43a, p. 76 and notes; Cooley's Const. Lim. (6th ed.), pp. 309, 310, and notes; Geo. S. & F. R. R. Co. v. Mer. Trust Co., 94 Ga., 306; s. c. 47 Am. St. Rep., 143; Thompson on Corps., secs. 502-3-4 and cases cited in the opinion, 7 Bush, 639; 85 Ky., 413.

3. Both these towns had the requisite population to be fifth-class cities and though transferred in an unauthorized manner, yet, acting under color of law, their municipal acts as fifth-class cities are binding. Same authorities above cited.

4. The officers of a corporation claiming in good faith to be fifth-class cities are *de jure* officers; certainly *de facto* officers of fifth-class cities, whose acts within the powers of officers of a fifth-class city are valid and can not collaterally be drawn in question. Dillon on Mun. Corps., sec. 276; Norton v. Shelby, 118 U. S., 425; 1. J. J. Mar., 206; 1 Blackstone, 371.

5. If the ordinances be valid there was no mistake of law in paying for the license. Appellees recognized them as ordinances of a fifth-class city and are estopped to question their validity. Cooley on Const. Lim., pp. 509-10; 16 Ind., 276; 8 Ind., 38.

6. The Constitution forbids the city to pay a debt created without express authority of law. Sec. 162.

7. Shackelford and Foxwell sued before they had paid more than they admit they should pay, and having their day in court as to the balance can not recover. L. & N. R. R. Co. v. Hopkins County, 87 Ky., 605; Same v. Com., 89 Ky., 531.

8. Price & Frederick and Forsyth & Henry knew that the validity of the ordinances was questioned before they took out license and rvoluntarily paying the price demanded and receiving the benefits thereby, should not be heard to complain. Klyman did not want license unless the price was $1,000. Note on pages 181-23-, 33 Am. St. Rep.; Kuhn v. Port Townsend, 50 Am. St. Rep., 911.

C. J. WADDILL, J. F. GORDON and BURBANK & RAYBOURN FOR APPELLEES.

1. The transfer of the towns of Providence and Sebree City from sixth- to fifth-class by the circuit court was without legal effect, and these towns were sixth-class towns de jure. Jernigan v. City of Madisonville, 19 Ky. Law Rep., 1412.

2. Sixth-class towns only authorized to charge from $150 to $500 for liquor license. See charter sixth-class towns.

3. These towns charged appellees $1,000, which appellees paid under mistake of law and fact, and are entitled to recover the excess so paid. Bruner & Bloom v. Clay City, 18 Ky. Law Rep., 1008; Bruner v. Town of Stanton, 19 Ky. Law Rep., 1514; Hite v. Town of Stanton, 2 Ky. Law Rep., 386; City of Owensboro v. Elder, 3 Ky. Law Rep., 255, and cases cited.

4. These towns being by act of Legislature made sixth-class towns de jure, can not be cities of another class de facto.

5. There was no such city or town de jure as Sebree City of the fifth class, or Providence of the fifth class, and there can be no de facto trustees of a city which does not exist. There is no such thing as de facto office known to the law. See Hildrich v. McIntyre, 1 J. J. M., 206.

6. Appellant towns can not plead their de facto organization in their own protection, acts of de facto officers and organizations not valid as to themselves, as it is equivalent to taking advantage of their own wrong. Creighton v. Com., 83 Ky., 147; 5 Am. & Eng. Ency. of Law, 107-8 and notes.

7. Section 162 of the Constitution does not apply. Appellant's obligation to refund in these cases does not spring from contractual relationship express or implied, or to be inferred from conduct, but it originated by the general obligation to do justice which rests upon all persons natural or artificial and upon public as well as private corporations. Beach on Contracts, sec. 1140; Newberger v. Town of Barnwell, 20 S. E. R., 14; 15 Am. & Eng. Ency. of Law, 1082-3 and notes; Lawson on Contracts, sec. 3, et seq.

8. Appellee Klyman not estopped by requesting that license fee be fixed at $1,000, as there is no proof that he knew that the trustes had no such authority.

9. Hampton and Rayborn not estopped by contract subsequently executed by appellee Hampton as this contract was procured from him by duress and under circumstances of oppression, these conditions are a bar to estoppel. Bruner & Bloom v. Clay City, *supra.*

10. Shackelford and Foxwell not estopped, appellants' plea of notice on part of appellees is merely an affirmative denial. Notice that the legality of the ordinance was questioned, not sufficient to estop. Appellees not presumed to know more than the executive and legislative departments of the governments under which they live. City of Louisville v. Anderson, 79 Ky., 334; Bruner v. Town of Stanton, *supra.*

11. Payment of the $500 note by appellees was an involuntary payment and was done under circumstances of hardship and oppression and does not create estoppel.

12. Forsyth & Henry and Price & Frederick not estopped under the evidence and instructions; the jury settled this question by their verdict, and being a plain matter of fact, their finding can not be disturbed.

SAME COUNSEL FOR APPELLEES IN A PETITION FOR A REHEARING.

JUDGE HOBSON DELIVERED THE OPINION OF THE COURT.

These five cases, involving the same facts, have by agreement been heard together. In the classification of the towns and cities of the State by the Legislature the town of Providence and Sebree City fell in the sixth class. After this they were, by judgments of the circuit court of the county, pursuant to section 3661 of the Kentucky Statutes, transferred to the fifth class. Thereupon in each of these towns a city government, consisting of a mayor, city council, etc., was organized pursuant to the statute governing cities of the fifth class. These city authorities fixed the license for selling spirituous, vinous, and malt liquors at $1,000. Appellees took out a license, and paid the city $1,000 therefor. Subsequently this court

in the case of Jernigan v. City of Madisonville, 19 Ky. Law
Rep., 1412 [43 S. W., 448], held the statute above referred
to empowering the circuit court to transfer a town from
one class to another to be in violation of section 156 of the
Constitution. Towns of the sixth class are not authorized
by statute to fix the license for selling spirituous, vinous,
and malt liquors at over $500. Kentucky Statutes, sec.
3704. Appelleesthereupon filed these suits to recover $500
of the amount each of them had paid, on the ground that it
was paid through mistake, and without authority of law.

The contention of the appellees is that, as the attempted
transfer of the towns from the sixth to the fifth class was
void, because in violation of the Constitution, the towns re-
mained in fact in the sixth class, and so had power only
to charge $500 for the license; and, $1,000 having been paid
on the assumption that the towns had been legally placed
in the fifth class, and so had the power of fifth-class cities,
the excess over $500 should be paid back to them.
They invoke the rule adopted in this State that money
paid in ignorance of law may be recovered where, in equity
and good conscience, it ought not to be retained.

We do not think this principle applies here. The appellees
have got all they bargained for. They wanted the privilege
of selling spirituous, vinous, and malt liquors at a certain
place. This they paid for, and this they have enjoyed. It
is immaterial to them whether the transfer of the town
from the sixth to the fifth class was legal or otherwise.

There was, in fact, a city government of the fifth class
under which they conducted their business and enjoyed
all the rights they expected in taking out their license.
The action of this *de facto* city government of the fifth class
protected third parties dealing with it. Appellees could
not be indicted for selling without license, and they can

not assail the regularity of the city government which they themselves, by their conduct, acquiesced in. In Dillon on Municipal Corporations, section 43a, the learned author says: "Where a municipal corporation is acting under color of law, and its existence is not questioned by the State, it can not be collaterally drawn in question by private parties; and the rule is not different although the Constitution may prescribe the manner of incorporation. . . . Hence, in an action by such a corporation to recover penalties imposed by its ordinances, *nul tiel* corporation is not a good plea."

In Atchison, &c., R. R. Co. v. Wilson, 33 Kan., 223 [6 Pac., 281], in disposing of a case something like this, the court, refusing to allow the regularity of the organization of a municipal corporation to be assailed, said: "The legality of the organization can not be questioned in a collateral proceeding, nor at the suit of a private party. The organization can not be attacked, nor any action taken affecting the existence of the corporation, except in a direct proceeding prosecuted at the instance of the State by the proper public officer."

In Clement v. Everest, 29 Mich. 19, in disposing of a similar objection, the court said: "It would be dangerous and wrong to permit the existence of municipalities to depend on the result of private litigation. Irregularities are common and unavoidable in the organization of such bodies; and both law and policy require that they shall not be disturbed except by some direct process authorized by law, and then only for very grave reasons."

In Kuhn v. Port Townsend 29 L. R. A., 447 [41 Pac., 925], the Supreme Court of Washington said: "A private citizen can not question the right of a municipal corporation to exercise the authority, powers, and functions of an

incorporated city. This can be done only in a direct pro-
ceeding prosecuted by the proper public officers of the
State."

To same effect, see Cooley on Constitutional Limitations,
(6th Ed.), 309, 310, and Thompson on Corporations,
section 503. These principles have been recognized by
this court, and it is well settled that one who deals with a
corporation, and recognizes its existence, is not permitted
to raise the question whether it has been legally organized
or not. H. & N. R. R. Co. v. Leavell, 16 B. Mon., 363;
Hughes v. Somerset Bank, 5 Litt., 46; Wight v. The Shelby
R. R. Co., 16 B. Mon., 7; [63 Am. Dec., 522]; Gill's Adm'x v.
Kentucky, &c., Mining Co., 7 Bush, 739.

Appellees, as citizens of the towns, not only acquiesced
in their organization as fifth-class cities, but, by taking out
licenses from them and acting under these licenses, they
recognized the existence of the city government, and can
not now raise the question whether they had been legally
organized or not. The last Legislature passed an act
transferring these cities to the fifth class (see Acts 1898,
p. 81), and so all questions of irregularity has now been re-
moved.

The government of a sixth-class town is totally
different from that of a fifth-class city. It is con-
ducted by different officers. One has a mayor and
city council; the other has only a board of five trustees.
The cities in question had no government as towns of the
sixth class when these licenses were taken out, and, if the
de facto government as a city of the fifth class was void,
there was no government at all. Appellees did not re-
ceive a license from a sixth-class town. They received a
license from a de facto fifth-class city, and the regularity

of this fifth-class city government not having been questioned by the State can not be questioned by them.

The judgments below are therefore reversed, with directions to the court below to grant the appellants a new trial in each of these cases, and for further proceedings in conformity to this opinion.